In re BUSY BEAVER BUILDING
CENTERS, INC., Debtor.

MARYLAND NATIONAL
BANK, Plaintiff,

v.

BUSY BEAVER BUILDING CENTERS,
INC., Defendant.

Bankruptcy No. 90–03924 JKF.
Adv. No. 91–0140.

United States Bankruptcy Court,
W.D. Pennsylvania.

May 28, 1991.

Joy Flowers Conti, and Paula A. Schmeck, Kirkpatrick & Lockhart, Pittsburgh, Pa., for debtor Busy Beaver.

Robert P. Simons, Klett Lieber Rooney & Schorling, Pittsburgh, Pa., for Maryland Nat. Bank.

David W. Lampl, Sable, Makoroff, Sherman & Gusky, Pittsburgh, Pa., for Official Committee of Unsecured Creditors.

MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

This adversary raises the issue of whether the court may decide by way of complaint for declaratory judgment the applicable statute of limitations on a prospective, unfiled fraudulent conveyance action. Plaintiff Maryland National Bank (MNB) is the major secured creditor of Busy Beaver Building Centers, Inc. (Debtor). Plaintiff seeks a declaratory judgment that the two-

year statute of limitations provided under Pennsylvania law, 42 Pa.C.S.A. § 5524 (1990), bars any action against MNB under the Pennsylvania Uniform Fraudulent Conveyance Act, 39 Pa.S.A. §§ 351–363 (1990). The Official Committee of Unsecured Creditors has intervened as a party defendant in this case. Both Debtor and the Committee contest the Court's jurisdiction to entertain this complaint. They contend that the issue is not ripe for adjudication and that there is no actual case in controversy. They also argue that under case law applicable in the Third Circuit, the court should exercise its discretion to deny the requested relief even if the action is ripe. To that end, they have filed a motion to dismiss the complaint.

The underlying fraudulent conveyance action, if brought, would be based upon a leveraged buyout of the Debtor. As alleged in the complaint,[1] the relevant facts are: on September 16, 1988, Busy Beaver Building Centers, Inc., BB Acquisition Corp., and Silo, Inc., entered into a stock purchase agreement through which BB Acquisition Corp. acquired all of the issued and outstanding stock of Busy Beaver Building Centers, Inc. On November 10, 1988, a plan and agreement of merger was signed by Busy Beaver Building Centers, Inc., and BB Acquisition Corp. The surviving corporation of the merger is the Debtor. Also on November 10, 1988, Debtor and MNB entered into financing agreements through which MNB provided Debtor a term loan in the amount of $5,900,-000.00 and revolving loans not to exceed $2,500,000.00 outstanding at any one time. The Debtor was to use these funds to finance the acquisition of the stock of Busy Beaver Building Centers, Inc., and to provide working capital for the Debtor. The financing agreements were evidenced by notes and secured by security agreements and mortgages which were filed of record. The collateral included most of Debtor's property and assets.

This bankruptcy was filed as a voluntary petition under Chapter 11 on December 12, 1990. The Committee was appointed short-ly thereafter, has selected counsel, and is investigating the leveraged buyout (LBO) regarding potential causes of action against MNB and against the former shareholders, officers and directors of the Debtor and its predecessors in interest. The Committee contends that even if it should determine that a fraudulent conveyance action against MNB would not lie, its investigation is necessary to ascertain, among other things, whether the claim of MNB should be subordinated to the claims of certain other creditors. MNB argues that the Committee's investigation is very costly to this estate, must be funded through Debtor's use of cash collateral of MNB, and cannot result in a fraudulent conveyance suit because of the applicable statute of limitations. MNB's contention is that the two-year statute of limitations expired before the bankruptcy was filed and bars the Committee from instituting such an action.

■ The Declaratory Judgment Act, 28 U.S.C. § 2201, limits the jurisdiction of a federal court to declare the rights and other legal relations of interested parties to actual controversies. The standard to be employed in determining whether a case of actual controversy exists within the meaning of the Act is similar to that for determining whether the case or controversy requirement of the United States Constitution has been satisfied. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). In essence, to satisfy the constitutional requirement, a controversy must be concrete and definite, must touch the legal relations of parties who have adverse legal interests, must be real and substantial and must admit of specific relief through a decree of conclusive character. *Aetna*, 300 U.S. at 240–41, 57 S.Ct. at 463–64. In construing the Declaratory Judgment Act, the Supreme Court articulated the standard for determining an actual controversy as follows:

Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a sub-

---

**1.** Answers have not been filed. The historical facts are recited as stated by MNB.

stantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *Maryland Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). In essence, the court must be able to declare the rights of the parties without rendering an advisory opinion.

Applying these standards, this Court finds that there is no actual, immediate controversy upon which it can declare an applicable statute of limitations. The statute of limitations is an affirmative defense which will be waived if not raised. F.Bankr.R. 7008, F.R.Civ.P. 8(c). Determining the applicable statute of limitations depends not only upon the facts as alleged but upon the theory of plaintiff's case. It is difficult for a court, in advance of actual litigation, to rule upon the validity of a particular defense. *Cf. Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir.1967) (noting, in a case distinguishable on its facts from the case at bench, the impossibility of "judicial determination that a valid defense existed to a non-existent cause of action").[2] Thus, the declaration of the applicability of a particular statute of limitations without the benefit of pleadings and without providing the parties an opportunity to contest the facts and legal theory of the complaint would be advisory in nature and constitutionally prohibited.

MNB's contention that the cost to this estate of the Committee's investigation would be minimized were the Court to entertain the declaratory judgment complaint is likewise without merit. The Committee has a statutory duty to investigate, *inter*

*alia*, the acts, conduct, assets, liabilities, and financial condition of the Debtor. *See* 11 U.S.C. § 1103(c). A fraudulent conveyance suit against MNB is not the only action which could result from the LBO. It is unlikely that the investigation would be concluded just because the Court determined, in advance of a pending action, a statute of limitations which could govern, at best, only one fraudulent conveyance theory.

The United States Court of Appeals for the Third Circuit addressed the Declaratory Judgment Act in *Step–Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643 (3d Cir.1990). The Court of Appeals established essentially a three-element test which the party requesting a declaration of rights must meet. The party must establish that there is an actual adversity of interest, that the declaration would have some practical utility in the case, and that the declaration would conclusively define the legal rights or relations of the parties. In this case, none of those elements can be met. The adversity prong is unknown. *See* footnote 2, *supra*. The Committee will proceed with its investigation whether or not the Court determines that a certain statute of limitations applies against MNB. Thus, the requested declaration would not end the controversy or conclusively define the legal rights or relations of the parties.

*Step–Saver* also stands for the proposition that even when the request for a declaratory judgment is ripe, the Court has discretion to refrain from declaring the rights of the parties. 912 F.2d at 646–47. Because the Court finds that the declaration sought would not end the investigation, would not minimize the expense to the estate, and would not conclusively deter-

---

2. *Brown v. Root, Inc.,* involved an issue of justiciability on a theory of malicious prosecution over facts which had not yet developed. In the case at bench, the facts are historical, not prospective, but the Committee is not bound to choose only a fraudulent conveyance theory, even if it uncovers what it may deem to be sufficient evidence to justify such a suit. Further, MNB is not the only potential defendant and the Committee may or may not agree with MNB's recitation of the facts upon which a suit could be founded. At this stage, it is difficult to determine whether there is a legitimate dispute

between the parties or whether any party in interest was injured or harmed as a result of the LBO. *Cf. Step–Saver Data Systems v. Wyse Technology,* 912 F.2d 643, 648 (3d Cir.1990) ("Moreover, the defendants may eventually concede this liability without a lawsuit.... [A]t this stage, nothing obliges [the defendants] to admit or deny their own liability because they have not been given a concrete idea of what defect [in equipment and software] they are being charged with. These factors militate strongly against a finding of adversity.")

mine the rights by and between the parties, the Court exercises discretion to deny the request for declaratory relief. *See Brown v. Ferro Corp.*, 763 F.2d 798, 801 (6th Cir.1985), *cert. denied*, 474 U.S. 947, 106 S.Ct. 344, 88 L.Ed.2d 291 (1985) (concerning ripeness, balancing the need for decision as a "function of the probability and importance of the anticipated injury" with the risks of decision "measured by the difficulty and sensitivity of the issues presented" and the necessity of further factual development) (quoting WRIGHT, MILLER & COOPER, 13A Federal Practice and Procedure, § 3532.1, at 114. Even if this action is ripe, the Court can deal more appropriately with the validity of an affirmative defense in the context of actual litigation.

An appropriate Order will be entered.

### ORDER

And now, to-wit, this 28th day of May, 1991, for the reasons set forth in the foregoing Memorandum Opinion, it is ORDERED that the request for declaratory judgment is DENIED; the motion to dismiss the complaint is GRANTED, and the complaint is DISMISSED.

The Clerk shall close this Adversary.